# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| OPHIR-SPIRICON, LLC,<br><br>      Plaintiff,<br><br>vs.<br><br>BURT MOONEY,<br><br>      Defendant. | FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM DECISION AND ORDER GRANTING TEMPORARY RESTRAINING ORDER<br><br>Case No. 1:11-cv-00161<br><br>Judge Dale A. Kimball |

      This matter is before the court on Plaintiff Ophir-Spiricon, LLC's Motion for a Temporary Restraining Order. Defendant was given notice of the motion and hearing on the motion. The court held the hearing on Plaintiff's motion on November 21, 2011. At the hearing, Plaintiff was represented by Mark Wagner, and Defendant was represented by Mark Morris. At the conclusion of the hearing, the court took the matter under advisement and requested the parties to submit a proposed form of order. Having received those submissions, and considering the arguments presented at the hearing, the arguments advanced in the briefing, and the law and facts relevant to the motion, the court issues the following memorandum decision and order granting Plaintiff's Motion for a Temporary Restraining Order.

## **Standard for Temporary Restraining Order**

    In order to obtain a temporary restraining order under Federal Rule of Civil Procedure 65, the movant must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of

equities tips in the movant's favor; and (4) that the injunction is in the public interest. *Id.* (citing *Winter v. Natural Res. Def. Council, Inc.*, 129 S. Ct. 365, 374 (2008)). "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Greater Yellowstone Coal v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003).

Moreover, if the movant has established the second, third, and fourth factors, a relaxed standard applies to the first factor. *Star Fuel Marts, LLC v. Sam's East, Inc.*, 362 F.3d 639, 652-53 (10th Cir. 2004) ("[W]here the moving party has established that the three 'harm' factors tip decidedly in its favor, the 'probability of success' requirement is relaxed").

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure. The court notes that the findings of fact and conclusions of law made by a court in deciding a temporary restraining order or preliminary injunction motion are not binding at the trial on the merits. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *City of Chanute v. Williams Natural Gas Co.*, 955 F.2d 641, 649 (10th Cir. 1992), *overruled on other grounds by Systemcare, Inc. v. Wang Labs Corp.,* 117 F.3d 1137 (10th Cir. 1997) (recognizing that "the district court is not bound by its prior factual findings determined in a preliminary injunction hearing."). The Court further notes that because this is a preliminary proceeding for injunctive relief, the Federal Rules of Evidence do not apply. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003); *see also Pharmanex, Inc. v. HPF, LLC*, No. 99-4116, 2000 U.S. App. LEXIS 11952, *9 (10th Cir. April 20, 2000) (unpublished) (citing JAMES WM. MOORE, ET AL., MOORE'S FEDERAL

PRACTICE § 65.23 (1999)) ("The Court can consider evidence outside the pleadings, including hearsay, when deciding whether to grant a preliminary injunction.").

## I. FINDINGS OF FACT

Defendant Burt Mooney is a former employee of Plaintiff Ophir-Spiricon ("O-S"), where his title was Pacific Northwest Sales Manager and Power/Energy Meter Specialist. As Pacific Northwest Sales Manager, Mooney was the salesman of O-S products in the states of Oregon, Alaska, Hawaii, and Washington. As a Power/Energy Meter Specialist, Mooney responded to in-house and customer inquiries regarding Power/Energy Meter products. O-S is a business that develops, manufactures, and supplies products for the measurement and analysis of lasers, including laser sensors, laser power and energy meters, PC interface devices, software, and related items, throughout the world. The laser measurement industry is a relatively small but highly competitive industry. There are four main competitors in the industry.

Mooney worked at O-S from 2002 through September 30, 2011. On September 18, 2011, Mooney gave O-S a two-week notice that he was resigning his position and going to work for a smaller competitor in the industry, Gentec. Mooney was invited to O-S's headquarters in Logan, Utah, for a debriefing and farewell interview. Mooney gave O-S as much information as he could about the customers in his sales territory with whom he was currently working. He was told to discard any price lists and other similar information that he had, which he did.

As part of Mooney's employment with O-S, in approximately December 2007, Mooney, along with other sales employees, was given the Employee Invention and Non-Disclosure

Agreement (the "Agreement"), which is at issue in this case. Mooney was told that he was required to sign it. He signed it on December 1, 2007, and returned it to O-S.

The Agreement contains three clauses relevant to Plaintiff's motion. Paragraph 2 of the Agreement provides as follows:

> Employee acknowledges that during the term of his employment with [O-S], Employee may be given access to or may become acquainted with the Confidential Information and Trade Secrets of [O-S]. Employee agrees not to use or disclose (directly or indirectly) any Confidential Information and Trade Secrets of [O-S] at any time or in any manner, except as required in the course of employment with [O-S]. The obligations of this Paragraph are continuing and survive the termination of [Mooney's] employment with [O-S]."

Paragraph 5 of the Agreement contains the following language:

> While employed by [O-S] and for two (2) years afterwards, [Mooney] agrees not to enter into any employment competitive with [O-S] in which the duties of the competitive employment would inherently require [Mooney] to reveal or use any of the Confidential Information and Trade Secrets of [O-S] learned or obtained by [Mooney].

Paragraph 5 further provides:

> While employed by [O-S] and for two (2) years afterward, [Mooney] agrees not to divert or attempt to divert (by solicitation or by any other means) the customers of [O-S] existing at the time [Mooney's] employment ends.

While there are disputed facts concerning Mooney's job title and duties, there is no dispute that Mooney was engaged in sales for O-S and became familiar with O-S's customer base. Mooney began his employment with Gentec, one of O-S's competitor's, on October 3, 2011. Mooney's position with Gentec is Sales Development Manager for the United States.

Mooney submitted a declaration stating that he has not solicited any O-S customers who were not already customers of Gentec as of October 1, 2011. Mooney further states that he has

no intention of soliciting non-Gentec O-S customers on behalf of Gentec during the two-year non-solicitation period provided for in the Agreement. The only customer's and potential customers of Gentec that he intends to service on behalf of Gentec are current customers of Gentec and new customers who were not customers of O-S as of October 1, 2011.

The parties agree that the laser measurement industry is small and they appear to agree that there are some large customers in the market who are well known to all four of the competing businesses in the industry. O-S, however, disputes that all of its customers would be known to Gentec and is concerned that Mooney's new position puts him in a position to divulge that information as well as product design and manufacturing trade secrets. Mooney, however, states that upon his departure from O-S, he took no customer lists, no proprietary information or trade secrets, and will not solicit any O-S customers who were not already Gentec customers during the two-year non-solicitation period of the Agreement. Mooney also disputes whether he has any knowledge regarding technical matters that would constitute trade secrets.

## II.  CONCLUSIONS OF LAW

The court will address each of the elements for a temporary restraining order in turn. "[B]ecause a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements of the issuance of the injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004).

### 1. *Irreparable Harm*

Irreparable injury occurs "when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain."

*Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001). Moreover, "an injury is not speculative simply because it is not certain to occur. The 'irreparable harm requirement is met if a [movant] demonstrates a *significant risk* that he or she will experience harm that cannot be compensated after the fact by monetary damages.'" *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003) (emphasis in original) (quoting *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000)).

Under this element for injunctive relief, the court usually analyzes whether the moving party has an adequate remedy at law. But in this case, under the Agreement, Mooney acknowledged that a "breach of any material provision of this Agreement may cause substantial and irreparable damage to [O-S], the exact amount of which will be difficult to ascertain." In addition to the terms of the Agreement, O-S has demonstrated that a breach of the Agreement through the solicitation of O-S customers or divulging trade secrets, including technical knowledge or certain proprietary marketing information, could cause harm that would be difficult to calculate through monetary damages.

However, at this stage of the litigation, O-S has not presented any specific evidence that Mooney is in fact breaching the Agreement. Rather, O-S argues that Mooney's position with Gentec would inherently require him to reveal O-S's confidential information and trade secrets. Mooney disputes that his entire employment at Gentec would run afoul of the Agreement and cautions the court against expanding the meaning of the clause beyond its plain terms.

The court concludes that O-S has demonstrated irreparable harm as to the solicitation of O-S clients who had no relationship with Gentec prior to October 1, 2011. However, O-S has not clearly and unequivocally demonstrated that it is irreparably harmed by Mooney's entire

employment with Gentec. At this point such harm is speculative. There are too many questions as to Mooney's knowledge of confidential information and trade secrets and too many questions as to his past and present duties to conclude that his mere employment with a competitor constitutes irreparable harm.

### 2. Balancing of Harms

The balance of harms element is closely related to the irreparable harm element. Under the balance of harms element, "a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *See Amoco Production Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987).

The court recognizes that O-S could suffer significant harm if Mooney solicits its existing customers who had no prior relationship with Gentec. Whereas, a temporary restraining order barring Mooney from any contact with O-S customers who did not previously have a relationship with Gentec would not cause any harm to Mooney.

However, a temporary restraining order prohibiting Mooney's employment at Gentec would leave him unemployed and potentially cripple his career. Mooney has worked in the industry for over 25 years, only nine of which were with O-S. The court, therefore, concludes that the harm to Mooney if this court entered injunctive relief barring his employment at Gentec would outweigh the harm to O-S if such relief is denied.

### 3. Public Interest

There are also competing interests with respect to the public interest element. Courts have recognized the public interest in the enforcement of contracts and preventing the misappropriation of trade secrets. *Merrill Lynch v. Ran*, 67 F. Supp. 2d 764, 781 (E. D. Mich.

7

1999). But there is also a public interest in a competitive marketplace, which is demonstrated in cases directing courts to construe noncompete provisions narrowly. At this stage of the litigation, the court concludes that the public interest is in maintaining the status quo—allowing Mooney to maintain his employment but requiring him to abide by the terms of the Agreement he entered into with O-S.

### *4. Likelihood of Success on the Merits*

Finally, O-S must demonstrate a likelihood of success on the merits of its two causes of action: (1) breach of the Agreement; and (2) actual and/or threatened misappropriation of trade secrets and confidential information.

On the breach of contract claim, O-S contends that Mooney's employment at Gentec would inherently cause him to breach the Agreement. O-S has no specific evidence that Mooney has affirmatively breached the Agreement. Mooney, however, argues that he does not have any protectable information regarding customers or other business secrets.

The parties' disputes as to the actual or threatened misappropriation of trade secrets and confidential information focus on whether customers within the laser measurement market can constitute a trade secret and whether Mooney in fact possesses any of O-S's trade secrets or confidential information. Mooney claims that the customers in the market are well known by all the manufacturers. Mooney also claims that he does not have knowledge of O-S's technical trade secrets.

These factual disputes as to the scope of Mooney's knowledge, the general knowledge of customers in the business, and the scope of the Agreement all "raise questions going to the merits so serious, substantial, difficult and doubtful as to make them a fair ground for litigation

and thus for more deliberate investigation." *Lundgrin v.* Clayton, 619 F.2d 61, 63 (10th Cir. 1980). Therefore, the court concludes that O-S has met the burden for a temporary restraining order on the grounds in which it has met the other three factors—soliciting O-S customers who had no relationship with Gentec prior to October 1, 2011, and disclosure of trade secrets or confidential information to the extent that Mooney has such information. Although Mooney has indicated that he has not and has no intentions of soliciting such customers, he acknowledges that O-S has a protectable interest in such exclusive customer relationships and agrees to an order enforcing the non-solicitation provisions of the Agreement. However, the court concludes that, at this early stage of the litigation, O-S has not met the burden for a temporary restraining order on the grounds for which it has not met the irreparable injury and balance of harm elements—prohibiting Mooney's employment at Gentec.

O-S has agreed to post a bond in the amount of $25,500. This amount is based on O-S's best estimate of Mooney's potential compensation for a two-month period until the court can hold a preliminary injunction hearing. Given that the court has allowed Mooney to maintain his employment and is enjoining him only from any activities prohibited in the Agreement, the court finds that a bond is unnecessary.

## **ORDER**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the court grants a temporary restraining order as follows:

(1) Mooney is restrained and enjoined from using or disclosing (directly or indirectly) any Confidential Information and Trade Secrets of O-S, as identified in the

Agreement, obtained by Mooney during his employment with O-S or its predecessors in interest.

(2) Mooney is restrained and enjoined from diverting or attempting to divert (by solicitation or any other means) any customers of O-S, existing as of October 1, 2011, who were not at that time also customers of Gentec, away from O-S with regard to some or all of their business with O-S. Mooney may, however, continue his employment with Gentec as long as he complies with all of the terms of the Agreement. Mooney may service all customers of Gentec as they existed on October 1, 2011. Mooney may also solicit business of any customer or potential customer of Gentec who were not customers of O-S as of October 1, 2011.

(3) No security or bond is necessary to protect Mooney as he is not being enjoined from his employment with Gentec.

(4) This Order is entered without prejudice to O-S's right to adduce additional evidence and present it at the hearing on a motion for preliminary injunction. The court will hold a two-day preliminary injunction hearing on January 26 and 27, 2012. The hearing will run each day from 8:30 a.m. until approximately 2:00 p.m., with no lunch break and two fifteen-minute breaks.

(5) Prior to the preliminary injunction hearing the parties may conduct expedited discovery of each other and third parties. The discovery shall be expedited as follows:

    a. Service of discovery requests and responses shall be by hand-delivery and/or email.

b. Discovery responses shall be due ten calendar days after receipt of a discovery request, without the three additional days for mailing.

c. Each party shall be entitled to take 6 depositions. These depositions shall be conducted after December 26, 2011. Parties shall be reasonable in making themselves available. These expedited depositions will not foreclose a party from re-deposing that deponent at a later date in the litigation.

d. Unless otherwise agreed to by the parties, the scope of the expedited discovery shall be limited to those issues before the court on O-S's motion for preliminary injunction.

e. The parties may each amend their briefing on the motion for preliminary injunction by January 18, 2012, and reply to the other party's amended briefing by January 25, 2012.

Based on the above reasoning, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction is GRANTED IN PART AND DENIED IN PART. The court will hold a two-day preliminary injunction hearing on January 26 and 27, 2012, at 8:30 a.m.

DATED this 23rd day of November, 2011.

BY THE COURT:

_____
DALE A. KIMBALL,
United States District Judge